

2115-12TH AVE #D
OakLand, CA 94606
510-681-7005

ASPEN SHACKLETON, III, LLC                                      Case No: RG
11573917

Plaintiff(s)                                                    UNLAWFUL DETAINER

COMPLAINT

v.                                                             CCP SECTIONS 1159/1160

SAN HIN SAELEE

DOES 1-10, INCLUSIVE                                           LIMITED JURISDICTION

Defendant(s)                                                   **C11-02272**

FILED
MAY - 9 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

NOTICE OF REMOVAL
ANSWER TO UNLAFUL DETAINER

## MOTION TO DISMISS

## ALLOW DEFENDANT TO PROCEED AS PLAINTIFF IN US DISTRICT COURT

## FOR

## CONSTITUTIONAL VIOLATIONS

## COMPLAINT TO INVOKE ADVERSARY PROCEEDING UNDER FRBP 7001(2) AFTER VIOLATIONS OFTRUTH IN LENDING ACT, FAIR DEBT COLLECTION PRACTICES ACT. ETC

COMES NOW, The Defendant, SAN HIN SAELEE, Pro Se  pursuant to California Rules of Civil Procedure, 1161a  Sections 2924, and  USCA Const Amends, 5, 8, and 14 . Defendant is naturalized and entitled to protection  under Federal Laws, and comes with next friend, RONALD D. COLLINS, who moves upon to dismiss the UNLAWFUL DETAINER, and grant Defendant leave to pursue his legal and constitutional rights as a victim of Predatory Lending and HOEPA Violations, and as such as Defendant does not speak English as a fluent language has not understood the foreclosure and eviction process without an interpreter, and further Defendant paid his second mortgage in it's entirety and 30 days later was foreclosed by Plaintiffs. Plaintiff was induced to sign documents he did not understand, and as such was deliberately and frequently mislead to believe his mortgage workout was being resolved by Defendants named in Federal Complaint as Exhibit to be prosecuted in U.S. District Court.

Defendant would request this Court to  dismiss the complaint and allow mediation as the parties
have discussed mediation and resolution. In the interests of justice this is " Equity Stripping in
violation of HOEPA.


## SUMMARY OF DEFENSE


Defendant speaks limited English and is a victim of HOEPA Violations TILA, RESPA, and is
entitled to Constitutional Protection, and in the interests of Justice this Court should hold to
Constitutional Law to allow U.S. District to rule on the merits of Defendants Claims, and
Constitutional Protections, and allow him to be heard before the Federal Court. It is in the sake
of justice that the Court allow him leave.

## NOTICE TO RE-FILE AND AMEND


**COMPLAINT TO INVOKE ADVERSARY PROCEEDING UNDER FRBP 7001(2)
AFTER VIOLATIONS OF TRUTH IN LENDING ACT, FAIR DEBT COLLECTION
PRACTICES ACT, ETC;**


FOR JUDICIAL REVIEW OF RESCISSION AND/OR FOR CANCELLATION OF
WRITTEN INSTRUMENTS (NOTE AND TRUST DEED), FOR QUIETING TITLE, FOR
DECLARATORY JUDGMENT, AND FOR OTHER DAMAGES FOR:

1.      RESCISSION OR CANCELLATION FOR LACK OF CONSIDERATION

2.      RESCISSION FOR VIOLATION OF TILA NOTICE OF RIGHT TO CANCEL

3.      VIOLATION OF 15 USC 1635(b):BY FAILURE TO RETURN MONEY AND
ACCEPT RESTITUTION

**4.**      RESCISSION FOR PADDED CHARGES THAT ARE DECEPTIVE
PRACTICES

5.      RESCISSION FOR FAILURE TO GIVE EACH ADULT RESIDENT HAVING
EQUITABLE INTEREST A COPY OF THE LOAN DOCUMENTS

6.     CANCELLATION OF INSTRUMENTS

7.     QUIET TITLE

8.     INJUNCTION

9.     DECLARATORY RELIEF

10.    FRAUD

11.    CONSTRUCTIVE FRAUD

12.    BREACH OF FIDUCIARY DUTY

13.    BREACH OF CONTRACT

14.    INTERFERENCE WITH CONTRACT

15.    UNJUST ENRICHMENT

16.    TRUST FUND MISHANDLING COMINGLING

17.    OTHER TILA VIOLATIONS

18.    RESPA VIOLATIONS

19.    FDCPA VIOLATIONS

20.    HOEPA VIOLATIONS

21.    VIOLATION OF FIN. CODE 4973(k)

22.    VIOLATION OF FIN CODE 22317.5

23.    ACCOUNTING

24.    NEGLIGENCE

25.    VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING

26.    FALSE ADVERTISING B&P 17200 and 17500

## INTRODUCTORY ALLEGATIONS

1.       Debtor/Plaintiff (hereinafter, "Debtor") brings this action to request
Adversary Proceeding during chapter 13 bankruptcy with federal questions to request validation
of the alleged debt, request proof that the debt is secured after rescission, to reiterate and to
enforce their rescission of subject predatory loan and recover for damages and other relief under
the Truth In Lending Act (TILA) Fair Debt Collection Practices Act (FDCPA), the Real Estate
Settlement Procedures Act (RESPA), and other Federal and State Laws.

2.       Plaintiff hereby invokes 28 U.S.C. 1367 to grant this Court of Record additional
Jurisdiction to adjudicate state issues also involved.

3.       Debtor/Plaintiff is a consumer that lives within the jurisdiction of this Court,
where their property is located and all relevant actions have taken place.

4.       Plaintiff SAN HIN SAELEE : SaeLee (hereafter, " SaeLee ") is, and at all
times relevant hereto was, an non native-born American, He hails from HounKhoung, Laos one
of the people, and domiciled in Oakland, Alameda County, California. SaeLee   is the Sole
Owner  of the Property and Heir of the four plex unit 2115 12th Ave, Oakland Ca.. Sae Lee
speaks very limited English and his comprehension is very limited. Plaintiff Sae Lee purchased
the property from the original owner by Grant Deed from Peter J. Wynn and received the Deed
upon paying $ 13,900 and $ 30,000, with Letters granting full authority to execute . Sae Lee, in
his capacity as individual and native of Laos worked hard and received the opportunity to buy
lease purchase directly from the owner, and signed the Loan Documents for the **purchase of
this real property. Sae Lee  is the real party in interest.**

5.       Upon information and Belief, Defendants CHASE, AMHSI,
SHACKLETON et al; (hereafter " CHASE") is, and at all times relevant hereto was, an
individual domiciled in  Columbus Ohio , AHMSI is located in Orange County Ca, and Aspen
Shackleton is domiciled in Portland Oregon, and Choice Financial is domiciled in Alameda

County, Ca as well as associates of Choice, and other Foreclosure Consulting Affiliates
involved..  **Chase et al;  is sued in both his corporate and individual capacities.**

      6.        Upon information and Belief, Defendants **Chase et al**  (hereafter, "  Chase
et al; ") is, and at all times herein mentioned was, an agent  and a  California corporation,
AHMSI  with its principal place of business in Irvine, Calif.  Upon further information and
belief, AHMSI  owns, directs, and/or operates as a servicing agent for Lenders..

      7.        Upon information and Belief, Defendants AHMSI, SHCKLETON. CHOICE
FINANCIAL. ET AL ;  (hereafter "  AHMSI ") is, and at all times relevant hereto was, an
individual domiciled in southern California and CHOICE FINANCIAL of ALAMEDA
COUNTY, CA( Hereafter " Choice " ) Defendant Choice Financial Corporation. **AHMSI,
CHOICE  et al;  is sued in both their  corporate and individual capacities.**

      8.        Upon information and Belief, Defendant AHMSI, CHOICE ET AL;
Financial Corporation (hereafter,  " AHMSI CHOICE " or " Choice  Financial") is, and at all
times herein mentioned was, a corporation with its principal place of business in Southern ,
Calif. Upon further information and belief,  regularly acts as agent for Chase  in real property
foreclosures.

      9.        Plaintiff is ignorant of the true names, capacities and relationships of all the
defendants sued herein, including DOES 1 through 5, inclusive, and therefore sues all defendants
by fictitious names. Plaintiff will amend this Complaint to allege the true names, capacities and
relationships of all Defendants, including DOE defendants when these become known.

      10.      Plaintiff alleges upon information and belief that each of the defendants
named herein, including DOES 1 through 5, is responsible in some manner for the occurrences
herein alleged, and that Plaintiff's damages as alleged herein were directly and proximately
caused by said defendants, including DOE Defendants.

VENUE

      11.      **Venue** is properly before this Court.  Most of the events, circumstances,
damages and denial of rights described herein took place in Alameda County.

12.    Upon information and belief Defendant Chase is domiciled in Kentucky and Defendant AHMSI is domiciled in Riverside County or Orange County..

13.    Upon information and belief, Defendants Choice Financial has its principal office in Alameda County, Choice Financial has its principal offices in Alameda County and both do substantial business in Alameda County.

14.    The property in question, 1125 12th Ave. Oakland, Ca , involving the Instruments requested to be cancelled for cause, is located in Alameda County.

15.    The Instruments described below were executed in Alameda County, Calif.

16.    There exists a certain written instrument that purports to be a promissory note. A copy of the note is attached to this complaint as **Exhibit 1- 20** and incorporated by reference.

17.    There exists a certain written instrument that purports to be a Grant Deed and or Deed of Trust related to the promissory note. A copy of the Deed of Trust is attached to this complaint as **Exhibit 2** and incorporated by reference.

18.    Both the Note and the Deed of Trust are:

a) **rescindable** for direct violations of TILA, including but not limited to a missing 3-day Notice of Right to Cancel after a delay in Consummation, inaccurate TILA Material Disclosures over the threshold after Foreclosure, lack or failure of consideration by a delay of about 3 months in payment of points to the Broker, consent was given without knowing about Defendants' misrepresentation, concealment, and fraud in the inducement, etc.

b) **voidable** for unilateral mistake, misrepresentation of a material fact, fraud in the inducement, concealment, duress (not knowing character of the transaction), undue influence, with unconscionable results: specifically, Misrepresentations in the Truth in Lending Act (hereinafter "TILA") required Disclosures and for Breach of Contract, Breach of Fiduciary Duty, Negligence, Trust Fund Mishandling, and for other reasons, as specially below. Foreclosure Consulting Fraud and Scams to induce a non English speaking citizen as prey for Predatory Loan Modification Scams, and Equity Stripping of Plaintiff by all Parties.

## BACKGROUND

Plaintiff brings this action against defendants Chase, AHMSI, and Choice Financial. (Pl.'s First Am. Compl. ("Compl."), filed Sept. 10, 2009, PP 2-4.) Plaintiff's claims are based upon a residential home loan transaction and the subsequent foreclosure of plaintiff's home. (Id. PP 7, 28.) Plaintiff, who is not fluent in English, bases several claims on defendants' failure to provide plaintiff with copies of documents in his native Mandarin language. (Id. P 9, 36.) Additionally, plaintiff alleges that defendant Chase and AHMSI acted as a "predatory lender" by misrepresenting the terms of plaintiff's loan and by failing to provide plaintiff with accurate disclosures. 2 (Id. PP 13-15.) All defendants have moved to dismiss the action for failing to state any claims upon which relief could be granted. *Fed. R. Civ. P. 12(b)(6)*.

2 The court notes that although plaintiff is represented by non counsel, his first complaint is virtually identical to the first amended complaint filed in Lanin v. Wells Fargo Bank, N.A., et al., Civ. S-09-2461 FCD/DAD, 2010 U.S. Dist. 14798 (E.D. Cal., Feb. 19, 2010)

## STANDARD

Under *Federal Rule of Civil Procedure 8(a)*, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*. Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly, 550 US. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A., 534 US. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*.

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto, 405 US. 319, 322, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972)*. The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn, 373 US. 746, 753 n.6, 83 S. Ct. 1461, 10 L. Ed. 2d 678 (1963)*. A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly, 550 US. at 570*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S. Ct. at 1949*.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986)*. While *Rule 8(a)* does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal, 129 S. Ct. at 1949*. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly, 550 US. at 555*; *Iqbal, 129 S. Ct. at 1950* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has

not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983)*.

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal, 129 S. Ct. at 1949* (citing *Twombly, 550 U.S. at 570*). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. *Id. at 1952*. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id. at 1949*. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. at 1950*.

## ANALYSIS

### A. Defendants' Exhibits

In ruling upon a motion to dismiss, the court may consider matters which may be judicially noticed pursuant to *Federal Rule of Evidence 201*. See *Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988)*; *Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998)*. *Rule 201* permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid. 201(b)*. The court can take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies. See *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988)*.

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)*. "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under *Rule 12(b)(6)*." Id. The policy concern underlying the rule is to prevent plaintiffs "from surviving a *Rule 12(b)(6)* motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)*.

Plaintiff's complaint alleges several causes of action that are premised on defendants' failure to provide the disclosures and number of copies of the Notice of Right to Cancel as required by TILA. (Compl. P 39.) Defendants' Exhibits D, E, and F are a copy of a Notice of Right to Cancel, a TILA Disclosure Statement, and a document entitled "Itemization of Amount Financed," respectively. All three documents bare plaintiff's signature and plaintiff does not contest their accuracy. Accordingly, as these documents form the basis of certain causes of action, the court considers them and assumes that the contents are true for the purpose of this motion to dismiss. *Ritchie, 342 F.3d at 908*.

## B. Violation of 15 U.S.C. § 1639(H) and HOEPA

Plaintiff's ninth and thirteenth causes of action are based on violations of *15 U.S.C. § 1639*, the Home Ownership and Equity Protection Act ("HOEPA"), which is an amendment to the Truth in Lending Act. (Compl. PP 85, 123.) Defendants argue that plaintiff fails to state a claim for relief under HOEPA because the loan at issue was used to purchase her primary residence, and therefore, it is not subject to the additional requirements of HOEPA.

HOEPA mandates additional disclosures to the borrower for mortgages which meet certain requirements. *15 U.S.C. § 1639*. Explicitly exempted from the provisions of HOEPA are "residential mortgage transactions." *15 U.S.C. § 1602(aa)(1)*. Residential mortgage transactions are, in turn, defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." *15 U.S.C. § 1602(w)*. Plaintiff's loan meets the definition of a residential mortgage transaction. Plaintiff states and alleges in his complaint that he used the money which he borrowed from Chase to refinance at the inducement of a telemarketing sales rep and the home in question and that home is his dwelling.

## C. TILA

Plaintiff's claim for relief is for a violation of TILA against defendant Chase and AHMSI . 3 Plaintiff asserts that Chase and AHMSI  under disclosed the finance charge and annual percentage rate ("APR") of plaintiff's loan by failing to include a $ charge in the disclosures made to plaintiff at the time of the loan. (Compl. P 111.) Plaintiff also claims that defendant failed to provide two copies of the notice of the right to rescind, and that defendant did not properly disclose the amount financed, the finance charge, and the total of payments as required by TILA. (Id. at PP 111-13.)

3 Plaintiff is seeking both rescission and damages for the alleged TILA violations. (Compl. P 117.) The remedy of rescission is not available for residential mortgage transactions. See *15 U.S.C. § 1635(e)*. As discussed above, plaintiff's loan meets the definition of a residential mortgage transaction and, therefore, plaintiff's only remedy under TILA is one for damages.

TILA violations include the failure to provide the required disclosures mandated by *15 U.S.C. § 1631*, and the failure to clearly and conspicuously disclose information relating to the "annual percentage rate" and the "finance charge" pursuant to *15 U.S.C. § 1632*. To recover damages arising from alleged TILA violations, a plaintiff must file an action to recover damages "within one year from the date of the occurrence of the violation." *15 U.S.C. § 1640(e)*. However, in certain circumstances, equitable tolling of civil damages claims brought under TILA is appropriate. See *King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986)*. The doctrine of equitable tolling may be appropriate when the imposition of the statute of limitations would be unjust or would frustrate TILA's purpose "to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit." Id. (quoting *15 U.S.C. § 1601(a)*). District courts, therefore, have the discretion to evaluate specific claims of equitable tolling and adjust the limitations period accordingly when the borrower may not have had a

reasonable opportunity to discover the fraud or nondisclosures that give rise to the TILA action. Id.

In this case, plaintiff alleges he consummated the loan on by inducement . The Grant Deed in his possession proved equitable entitlement .

## D. RESPA

Plaintiff's claim is for violation of the Real Estate Settlement Procedures Act ("RESPA") against defendant Countrywide. *12 U.S.C. 2601 et. seq.*

Defendant Chase and AHMSI violated RESPA with respect to Plaintiff's loan transaction by: (a) giving or accepting kickbacks or other things of value in violation of *12 U.S.C. § 2607(a)* and *24 C.F.R. § 3500.14(b)*; and (b) giving a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of *12 U.S.C. § 2607(b)* and *24 C.F.R. § 3500.14(c)*.

## E. Quiet Title

Plaintiff's claim for relief is also an action to quiet title against all defendants. Plaintiff seeks a judicial declaration that the property is vested in him alone, and that the defendants have acquired interest by predatory lending to gain equity of the estate or interest in the property

Plaintiff has paid off the second mortgage lien in it's entirety and is entitled to relief..

## F. California Civil Code § 1632

Plaintiff's claim for relief is based on a violation of *California Civil Code § 1632.* (Compl. PP 36-37.) *Section 1632* provides that when certain types of contracts are negotiated in certain languages other than English, the offeree must be provided with a translated copy of the contract before the contract is executed. *Cal. Civ. Code § 1632(b)* (West 2009). Defendants contend that plaintiff cannot state a cause of action under *§ 1632* because plaintiff does not speak one of the languages covered by the statute.

*Section 1632(b)* provides that "[a]ny person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean . . . shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated. . . ." *Cal. Civ. Code § 1632(b)* (West 2009). *Section 1632* was originally enacted in 1976 and applied only to the Spanish language. 1974 Cal. Stat. ch. 1446. In 2003, the California Legislature passed Assembly Bill 309, which added the Chinese, Tagalog, Vietnamese, and Korean languages to the statute. 2003 Cal. Stat. ch. 330. The statute has been amended as recently as 2008. 2008 Cal. Stat. ch. 278.

## G. Rescission Based on Fraud and Fraud

Plaintiff's claims for relief are based on the alleged fraud of defendant Chase andAHMSI, Choice Financial et al;. Plaintiff alleges that "[d]efendant Chase and AHMSI, et al; fraudulently, intentionally, and knowingly induced the Plaintiff to enter into the subject mortgage transaction by misrepresenting and/or failing to provide material information." (Compl. P 128.)

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages." *Gil v. Bank of Am., Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381, 42 Cal. Rptr. 3d 310 (2006)*. A court may dismiss a claim grounded in fraud when its allegations fail to satisfy *Rule 9(b)*'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003)*. Therefore, plaintiff "must state with particularity the circumstances constituting fraud." *Fed. R. Civ. P. 9(b)*. In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. *Id. at 1106* (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)*. The purpose of *Rule 9(b)* is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. *Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995)*. "Without such specificity, defendants in these cases would be put to an unfair advantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing." Id. (citing *Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)*).

Furthermore, "*Rule 9(b)* does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007)*. When asserting a fraud claim against a corporation, "the plaintiff's burden . . . is even greater. . . . The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Lazar v. Superior Court, 12 Cal. 4th 631, 645, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996)* (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157, 2 Cal. Rptr. 2d 861 (1991)*); see also *Edejer, 2009 U.S. Dist. 52900 at *36* (dismissing the fraud claim where the plaintiff did not allege any misrepresentation or false statements made by the defendants; did not allege the names of the persons who made the allegedly fraudulent representations and their authority to speak; and did not allege with sufficient particularity or clarity what was false or misleading about the statements); *Mohammad Akhavein v. Argent Mortgage Co., 2009 U.S. Dist. 61796, at *10 (N.D. Cal. July 17, 2009)*; *Spencer v. DHI Mortgage Co., 642 F. Supp. 2d 1153, 2009 U.S. Dist. 55191, at *18 (E.D. Cal. June 30, 2009)* (dismissing the plaintiff's fraud claim without leave to amend because it failed to satisfy *Rule 9(b)*'s "'who, what, when, where and how' requirements" and was so deficient as to "suggest no potential improvement from an attempt to amend").

In the present case, plaintiff has met the heightened pleading requirement of *Rule 9(b)*. Specifically, plaintiff has alleged fraud against Chase and AHMSI , which is a corporation, but has failed to allege who actually made the supposedly false representations or their ability to speak for the corporation. See *Lazar v. Superior Court, 12 Cal. 4th 631, 645, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996)*; *Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157,*

*2 Cal. Rptr. 2d 861 (1991).* For instance, plaintiff alleges that Countrywide "intentionally failed to disclose [facts] as of April 10, 2007, and thereafter continued to keep this material information from Plaintiff" and that Countrywide "fraudulently, intentionally, and knowingly induced the Plaintiff to enter into the subject mortgage transaction." (Compl. PP 52, 128.) These allegations fail to allege which individuals purportedly failed to make such disclosures.

## H. RFDCPA and FDCPA Violations

Plaintiff's claim for relief alleges violations of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), the Federal Fair Debt Collection Practices Act ("FDCPA"), and RESPA against all defendants. (Compl. P 57.) Defendants move to dismiss this claim because plaintiff has failed to allege any facts which could constitute a violation of these statutes.

This claim is predicated upon defendants' alleged violations of the RDFCPA, FDCPA, and RESPA.

## I. Unfair Business Practices

Plaintiff's claim asserts that all defendants violated *Section 17200 of the California Business & Professions Code* by engaging in unlawful, unfair, and fraudulent business practices. (Compl. P 62.) Plaintiff predicates this claim on defendants' alleged violations of *California Civil Code § 1632*, RFDCPA, FDCPA, and RESPA. (Compl. P 107.)

The Unfair Competition Law ("UCL"), *California Business and Professions Code §§ 17200, et seq.,* forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." *Cal. Bus. & Prof. Code § 17200.* "The UCL is broad in scope, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal. App. 4th 950, 959, 70 Cal. Rptr. 3d 501 (2008)* (internal citations omitted).

## J. Breach of Fiduciary Duty

Plaintiff's claim for relief, against all defendants, alleges defendants breached their fiduciary duties by allegedly failing to provide him with all disclosures required by law.

In order to sustain a claim for breach of a fiduciary duty, "a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." *Serrano v. Sec. Nat'l Mortg. Co., 2009 U.S. Dist. 71725 (S.D. Cal. Aug. 14, 2009)* (citing *Shopoff & Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489, 85 Cal. Rptr.3d 268, 285 (Cal. Ct. App. 2008).* "

## K. Breach of Contract

Plaintiff's claim for relief is for breach of contract against defendant Chase and AHMSI . Plaintiff alleges that defendant had a duty to provide a copy of the contract in the Native language and that "[t]his failure to disclose, was and is a breach of contract by defendant." Id. To

the extent that plaintiff's breach of contract claim is based on a violation of *California Civil Code § 1632* for failure to provide a Mandarin language translation of the contract.

## L. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for relief asserts that Chase and AHMSI breached the implied covenant of good faith and fair dealing. Plaintiff specifically alleges that defendants collectively breached the implied covenant of good faith when they: (1) failed to comply with *California Civil Code § 1632*, requiring defendant to provide a copy of the contract in plaintiff's Native language;

Choice Lending willfully and fraudulently mislead Plaintiff into believing they were achieving a loan workout for the defendant.

## M. Wrongful Foreclosure

Plaintiff's claim for relief is a claim for wrongful foreclosure against all defendants. 5 The basis of plaintiff's allegation is that Chase and AHMSI has never provided the actual promissory note but only a copy.

5 Plaintiff's complaint couches the claim as one for "unlawful" foreclosure. The court construes this as a claim "wrongful" foreclosure.

*California Civil Code §§ 2924 through 29241* govern non-judicial foreclosures pursuant to a deed of trust. Non-judicial foreclosure may be initiated by a "trustee, mortgagee, or beneficiary, or any of their authorized agents." *Cal. Civ. Code § 2924(a)(1)*. Plaintiff contends that even when the deed of trust designates a party as a trustee or beneficiary and the party complies with the remaining requirements of *Sections 2924 through 29241*, this is not sufficient to demonstrate that a party has the power to foreclose, because the party must also provide the original promissory note. Plaintiff bases his argument, in part, on the requirements of the California Commercial Code. (Compl. P 100-01.)

## N. Civil Conspiracy to Commit Fraud

Plaintiff seeks a cause of action is for civil conspiracy to commit fraud against defendant Chase, and AHMSI. Plaintiff will allege many facts which could constitute a conspiracy. The court must agree after a full and fair hearing on this matter.. One of the hallmarks of any conspiracy claim is an agreement between two or more people. Plaintiff's conspiracy claim is directed towards several participants and several defendants, namely Chase and AHMSI. Additionally, plaintiff's claims have factual support. Plaintiff alleges that "[t]hrough their unlawful conduct constituting a civil conspiracy to defraud a vulnerable and immigrant homeowner, defendant Chase and AHMSI acted in a malicious, willful, wanton, and oppressive fashion, in reckless disregard of plaintiffs rights."

## O. Declaratory and Injunctive Relief

Plaintiff's cause of action for declaratory and injunctive relief is based upon plaintiff's first nine causes of action which this court will find has merit in US District Court the proper forum.

**P. Leave to Amend**

Plaintiff has requested that this Unlawful Detainer Court Dismiss this action to allow leave to amend his Federal complaint.

Defendant is prejudiced extremely because of the language barrier and is a victim of Predatory Lending and HOEPA violations. In the interests of justice relief must be granted.

However, as to plaintiff's remaining claims, the court should find, at this juncture, that plaintiff has alleged facts which would support such claims for relief, and thus, leave to amend those claims must be granted. *Fed. R. Civ. P. 15.* To proceed in US District Court.

**WHEREFORE, The Defendant moves upon this Honorable Court for the relief requested, and any and all other relief entitled by law.**

Respectfully Submitted,

5/9/2011

SAN HIN SANLEE

SAN Hii SALEEE
2115 12th Ave #D
Oakland, CA 94606
510-681-7005

**OSKANA KOPCHUK, Plaintiff, v. COUNTRYWIDE FINANCIAL CORPORATION, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, RECONTRUST COMPANY; and DOES 1-50, Defendants.**

**Civ. No. S-09-2681 FCD/GGH**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2010 U.S. Dist. 23884*

**March 15, 2010, Decided**

**March 15, 2010, Filed**

**JUDGES:** FRANK C. DAMRELL, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** FRANK C. DAMRELL, JR.

**OPINION**

MEMORANDUM AND ORDER

This matter is before the court on the motion of defendants Countrywide Financial Corporation ("Countrywide"), Recontrust Company, N.A. ("Recontrust"), and Mortgage Electronic Registration System ("MERS") to dismiss plaintiff Oksana Kopchuk's ("plaintiff") first amended complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). (Docket No. 12). Plaintiff opposes the motion. For the reasons set forth below, 1 defendants' motions are GRANTED.

1 Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. *E.D. Cal. L.R. 230(g)*.

**BACKGROUND**

Plaintiff brings this action against defendants Countrywide, Recontrust, and MERS. (Pl.'s First Am. Compl. ("Compl."), filed Sept. 10, 2009, PP 2-4.) Plaintiff's claims are based upon a residential home loan transaction and the subsequent impending foreclosure of plaintiff's home. (Id. PP 7, 28.) Plaintiff, who is not fluent in English, bases several claims on defendants' failure to provide plaintiff with copies of documents in her native Slavic language. (Id. P 9, 36.) Additionally, plaintiff alleges that defendant Countrywide acted as a "predatory lender" by misrepresenting the terms of plaintiff's loan and by failing to provide plaintiff with accurate disclosures. 2 (Id. PP 13-15.) All defendants have moved to dismiss the action for failing to state any claims upon which relief could be granted. *Fed. R. Civ. P. 12(b)(6)*.

2 The court notes that although plaintiff is represented by different counsel, her first amended complaint is virtually identical to the first amended complaint filed in Lanin v. Wells Fargo Bank, N.A., et al., Civ. S-09-2461 FCD/DAD, 2010 U.S. Dist. 14798 (E.D. Cal., Feb. 19, 2010), which this court dismissed in its entirety on similar grounds less than one month ago.

## STANDARD

Under *Federal Rule of Civil Procedure 8(a)*, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)*. Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*.

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972)*. The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6, 83 S. Ct. 1461, 10 L. Ed. 2d 678 (1963)*. A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly, 550 U.S. at 570*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S. Ct. at 1949*.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986)*. While *Rule 8(a)* does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal, 129 S. Ct. at 1949*. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly, 550 U.S. at 555*; *Iqbal, 129 S. Ct. at 1950* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).*

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal, 129 S. Ct. at 1949* (citing *Twombly, 550 U.S. at 570*). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. *Id. at 1952.* While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id. at 1949.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. at 1950.*

## ANALYSIS

### A. Defendants' Exhibits

In ruling upon a motion to dismiss, the court may consider matters which may be judicially noticed pursuant to *Federal Rule of Evidence 201.* See *Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). Rule 201* permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Fed. R. Evid. 201(b).* The court can take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies. See *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988).*

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).* "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under *Rule 12(b)(6).*" Id. The policy concern underlying the rule is to prevent plaintiffs "from surviving a *Rule 12(b)(6)* motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).*

Plaintiff's complaint alleges several causes of action that are premised on defendants' failure to provide the disclosures and number of copies of the Notice of Right to Cancel as required by TILA. (Compl. P 39.) Defendants' Exhibits D, E, and F are a copy of a Notice of Right to Cancel, a TILA Disclosure Statement, and a document entitled "Itemization of Amount Financed," respectively. All three documents bare plaintiff's signature and plaintiff does not contest their accuracy. Accordingly, as these documents form the basis of certain causes of action, the court considers them and assumes that the contents are true for the purpose of this motion to dismiss. *Ritchie, 342 F.3d at 908.*

### B. Violation of 15 U.S.C. § 1639(H) and HOEPA

Plaintiff's ninth and thirteenth causes of action are based on violations of *15 U.S.C. § 1639*, the Home Ownership and Equity Protection Act ("HOEPA"), which is an amendment to the Truth in Lending Act. (Compl. PP 85, 123.) Defendants argue that plaintiff fails to state a claim for relief under HOEPA because the loan at issue was used to purchase her primary residence, and therefore, it is not subject to the additional requirements of HOEPA.

HOEPA mandates additional disclosures to the borrower for mortgages which meet certain requirements. *15 U.S.C. § 1639*. Explicitly exempted from the provisions of HOEPA are "residential mortgage transactions." *15 U.S.C. § 1602(aa)(1)*. Residential mortgage transactions are, in turn, defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." *15 U.S.C. § 1602(w)*. Plaintiff's loan meets the definition of a residential mortgage transaction. She alleges in her complaint that she used the money which she borrowed from Countrywide to acquire the home in question and that home is her dwelling. (Compl. PP 1, 7, 110.) Therefore, plaintiff cannot state a claim for relief under HOEPA because the loan transaction is not of the type that triggers the additional requirements of *Section 1639*.

Accordingly, defendants' motion to dismiss plaintiff's ninth and thirteenth claims for relief is GRANTED without leave to amend.

## C. TILA

Plaintiff's twelfth claim for relief is for a violation of TILA against defendant Countrywide. 3 Plaintiff asserts that Countrywide underdisclosed the finance charge and annual percentage rate ("APR") of plaintiff's loan by failing to include a $ 957 charge in the disclosures made to plaintiff at the time of the loan. (Compl. P 111.) Plaintiff also claims that defendant failed to provide two copies of the notice of the right to rescind, and that defendant did not properly disclose the amount financed, the finance charge, and the total of payments as required by TILA. (Id. at PP 111-13.)

3 Plaintiff is seeking both rescission and damages for the alleged TILA violations. (Compl. P 117.) The remedy of rescission is not available for residential mortgage transactions. See *15 U.S.C. § 1635(e)*. As discussed above, plaintiff's loan meets the definition of a residential mortgage transaction and, therefore, plaintiff's only remedy under TILA is one for damages.

Defendant moves to dismiss on the ground that plaintiff's TILA claim is barred by the statute of limitations. Plaintiff did not respond to defendants' argument her opposition to the motions. However, based on plaintiff's statement in her complaint asserting she did not discover the alleged TILA disclosure violations until on or about April 15, 2009, the court will construe plaintiff's pleading as alleging that the statute of limitations should be equitably tolled. (Compl. P 111.)

TILA violations include the failure to provide the required disclosures mandated by *15 U.S.C. § 1631*, and the failure to clearly and conspicuously disclose information relating to the "annual percentage rate" and the "finance charge" pursuant to *15 U.S.C. § 1632*. To recover damages

arising from alleged TILA violations, a plaintiff must file an action to recover damages "within one year from the date of the occurrence of the violation." *15 U.S.C. § 1640(e)*. However, in certain circumstances, equitable tolling of civil damages claims brought under TILA is appropriate. See *King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986)*. The doctrine of equitable tolling may be appropriate when the imposition of the statute of limitations would be unjust or would frustrate TILA's purpose "to assure a meaningful disclosure of credit terms so that the consumer will be able to . . . avoid the uninformed use of credit." Id. (quoting *15 U.S.C. § 1601(a)*). District courts, therefore, have the discretion to evaluate specific claims of equitable tolling and adjust the limitations period accordingly when the borrower may not have had a reasonable opportunity to discover the fraud or nondisclosures that give rise to the TILA action. Id.

In this case, plaintiff alleges she consummated the loan on or about April 10, 2007. (Compl. P 73.) The Deed of Trust is dated that same day. (Defs.' Ex. A. to RJN, filed Dec. 17, 2009.) Accordingly, as plaintiff did not bring the instant action until April 23, 2009, more than one year has passed since the alleged TILA violations.

To the extent that plaintiff seeks application of equitable tolling on the basis that she did not discover the disclosure errors until April 2009, plaintiff's claim fails. Plaintiff pleads no facts to explain why she could not otherwise have discovered the TILA violations at the consummation of her loan. "Such factual underpinnings are all the more important . . . since the vast majority of [plaintiffs'] alleged violations under TILA are violations that are self-apparent at the consummation of the transaction." *Cervantes v. Countrywide Home Loans, Inc., 2009 U.S. Dist. 87997, at ** 13-14 (D. Ariz. 2009)* (holding that equitable tolling was not appropriate when the plaintiffs simply alleged that the defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure"). Moreover, here plaintiff herself, in alleging that any assignees of the loan are also liable for the TILA violations, states that the alleged violations "were apparent on the face of the disclosure statement." (Compl. P 115 (quotations omitted).) Without more factual information regarding why the alleged disclosure violations were not, and could not have been, reasonably discovered until 2009, the court cannot equitably toll the statute of limitations in this case.

As such, Countrywide's motion to dismiss plaintiff's claim for violations of TILA is GRANTED. 4

4 While the court makes its determination based on the statute of limitations, the court grants plaintiff leave to amend to provide more facts as to why the allegedly incorrect disclosures were not discovered until April 2009. Additionally, the court notes that much of plaintiff's twelfth claim for relief fails to meet the pleading requirements under *FRCP 8*. Plaintiff claims that the disclosures she was provided inaccurately stated the amount financed, the finance charge, the annual percentage rate, and the total of payments. However, the complaint is devoid of any factual underpinnings for these assertions; in particular, how the disclosures, which were provided to plaintiff at the time of closing, were inaccurate. (See Defs.' Ex. E and F to RJN.)

## D. RESPA

Plaintiff's sixteenth claim is for violation of the Real Estate Settlement Procedures Act
("RESPA") against defendant Countrywide. *12 U.S.C. 2601 et. seq.* Countrywide has moved to
dismiss this claim on the basis that plaintiff has failed to plead any facts which could constitute a
RESPA violation.

Plaintiff has failed to state a cause of action under RESPA. Plaintiff's sixteenth cause of action
lists a litany of charges including several violations of California law. (Compl. PP 147-54.)
Plaintiff's only allegations that could constitute a possible violation of RESPA are in paragraph
140 of the complaint:

Defendant Country[wide] violated RESPA with respect to Plaintiff's loan transaction by: (a)
giving or accepting kickbacks or other things of value in violation of *12 U.S.C. § 2607(a)* and *24
C.F.R. § 3500.14(b)*; and (b) giving a portion, split, or percentage of charges made or received
for the rendering of a real estate settlement service in connection with a transaction involving a
federally related mortgage loan other than for services actually performed, in violation of *12
U.S.C. § 2607(b)* and *24 C.F.R. § 3500.14(c)*.

(Compl. P 140.) Plaintiff's allegations are barren of factual support. Plaintiff fails to state how
Countrywide has given or accepted kickbacks or split fees. Accordingly, Countrywide's motion
to dismiss plaintiff's RESPA claim is GRANTED.

## E. Quiet Title

Plaintiff's first claim for relief is an action to quiet title against all defendants. (Compl. P 30.)
Plaintiff seeks a judicial declaration that the property is vested in her alone, and that none of the
defendants have any estate or interest in the property. (Id. at P 35.) Defendants contend that
plaintiff cannot state a claim against a lender to quiet title unless the plaintiff's debt has been
paid.

In order to proceed on a claim to quiet title against a lender, the property owner must first
discharge his or her debt. See *Aguilar v. Bocci, 39 Cal. App. 3d 475, 477-78, 114 Cal. Rptr. 91
(1974)* (stating that the plaintiff could not clear his title without first satisfying his debt). "The
cloud upon [a plaintiff's] title persists until the debt is paid." Id. citing *Burns v. Hiatt, 149 Cal.
617, 620, 87 P. 196 (1906)*. Plaintiff does not allege that the debt has been repaid to defendants.
While plaintiff contends for myriad reasons that she should not be forced to pay her debt to
defendants based on defendants' actions at the time of plaintiff's purchase of her home, the
requirement to state a claim to quiet title is clear: plaintiff must have repaid the debt to seek to
quiet title. Id.

Accordingly, defendants' motion to dismiss plaintiff's quiet title claim is GRANTED without
leave to amend.

## F. California Civil Code § 1632

Plaintiff's second claim for relief is based on a violation of *California Civil Code § 1632.*
(Compl. PP 36-37.) *Section 1632* provides that when certain types of contracts are negotiated in

certain languages other than English, the offeree must be provided with a translated copy of the contract before the contract is executed. *Cal. Civ. Code § 1632(b)* (West 2009). Defendants contend that plaintiff cannot state a cause of action under *§ 1632* because plaintiff does not speak one of the languages covered by the statute.

*Section 1632(b)* provides that "[a]ny person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean . . . shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated. . . ." *Cal. Civ. Code § 1632(b)* (West 2009). *Section 1632* was originally enacted in 1976 and applied only to the Spanish language. 1974 Cal. Stat. ch. 1446. In 2003, the California Legislature passed Assembly Bill 309, which added the Chinese, Tagalog, Vietnamese, and Korean languages to the statute. 2003 Cal. Stat. ch. 330. The statute has been amended as recently as 2008. 2008 Cal. Stat. ch. 278.

Plaintiff admits that the Slavic language which she speaks is not included as a covered language under *Section 1632*. (Compl. P 38.) However, plaintiff argues that this court should extend the statute to the Slavic language based on the overall purpose of *Section 1632*. (Id. at PP 38-40). Plaintiff has not provided any authority for this proposition, but contends that the Slavic language should be covered based on the large increase in Slavic speakers in California since the statute was originally enacted in 1976. (Compl. P 40.)

Plaintiff's argument fails. When the statute was originally enacted in 1976, it only protected Spanish speakers. 1974 Cal. Stat. ch. 1446. It was not until 2003, and based upon information in the most recent census, that the legislature chose to amend the statute to include additional languages. 2003 Cal. Stat. ch. 330. The legislature has amended the statute as recently as 2008, but chose not to include the Slavic language as a protected language under the statute. 2008 Cal. Stat. ch. 278. The question of which languages are to be covered is a question for the legislature, not this court. Because plaintiff has failed to allege that she negotiated any contract in a language which is protected by the statute, plaintiff's claim under *Section 1632* must be dismissed.

Defendants' motion to dismiss this claim is accordingly GRANTED without leave to amend.

### G. Rescission Based on Fraud and Fraud

Plaintiff's third and fourteenth claims for relief are based on the alleged fraud of defendant Countrywide. Plaintiff alleges that "[d]efendant Country[wide] fraudulently, intentionally, and knowingly induced the Plaintiff to enter into the subject mortgage transaction by misrepresenting and/or failing to provide material information." (Compl. P 128.)

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages." *Gil v. Bank of Am., Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381, 42 Cal. Rptr. 3d 310 (2006)*. A court may dismiss a claim grounded in fraud when its allegations fail to satisfy *Rule 9(b)*'s heightened pleading requirements. *Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003)*. Therefore, plaintiff "must state with particularity the circumstances constituting fraud." *Fed. R. Civ. P. 9(b)*.

In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. *Id. at 1106* (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)*. The purpose of *Rule 9(b)* is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. *Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995)*. "Without such specificity, defendants in these cases would be put to an unfair advantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing." Id. (citing *Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)).*

Furthermore, "*Rule 9(b)* does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007)*. When asserting a fraud claim against a corporation, "the plaintiff's burden . . . is even greater. . . . The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Lazar v. Superior Court, 12 Cal. 4th 631, 645, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996)* (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157, 2 Cal. Rptr. 2d 861 (1991))*; see also *Edejer, 2009 U.S. Dist. 52900 at \*36* (dismissing the fraud claim where the plaintiff did not allege any misrepresentation or false statements made by the defendants; did not allege the names of the persons who made the allegedly fraudulent representations and their authority to speak; and did not allege with sufficient particularity or clarity what was false or misleading about the statements); *Mohammad Akhavein v. Argent Mortgage Co., 2009 U.S. Dist. 61796, at \*10 (N.D. Cal. July 17, 2009)*; *Spencer v. DHI Mortgage Co., 642 F. Supp. 2d 1153, 2009 U.S. Dist. 55191, at \*18 (E.D. Cal. June 30, 2009)* (dismissing the plaintiff's fraud claim without leave to amend because it failed to satisfy *Rule 9(b)*'s "'who, what, when, where and how' requirements" and was so deficient as to "suggest no potential improvement from an attempt to amend").

In the present case, plaintiff has failed to meet the heightened pleading requirement of *Rule 9(b)*. Specifically, plaintiff has alleged fraud against Countrywide, which is a corporation, but has failed to allege who actually made the supposedly false representations or their ability to speak for the corporation. See *Lazar v. Superior Court, 12 Cal. 4th 631, 645, 49 Cal. Rptr. 2d 377, 909 P.2d 981 (1996)*; *Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157, 2 Cal. Rptr. 2d 861 (1991)*. For instance, plaintiff alleges that Countrywide "intentionally failed to disclose [facts] as of April 10, 2007, and thereafter continued to keep this material information from Plaintiff" and that Countrywide "fraudulently, intentionally, and knowingly induced the Plaintiff to enter into the subject mortgage transaction." (Compl. PP 52, 128.) These allegations fail to allege which individuals purportedly failed to make such disclosures.

Therefore, the court must GRANT Countrywide's motion to dismiss plaintiff's claims for rescission based on fraud and fraud.

**H. RFDCPA and FDCPA Violations**

Plaintiff's fourth claim for relief alleges violations of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), the Federal Fair Debt Collection Practices Act ("FDCPA"), and RESPA against all defendants. (Compl. P 57.) Defendants move to dismiss this claim because plaintiff has failed to allege any facts which could constitute a violation of these statutes.

Plaintiff has failed to allege any facts which could constitute unfair debt collection. In plaintiff's opposition to the motion she contends that defendants violated California and federal debt collection laws by threatening to sell her property. (Pl.'s Opp., 14:10-11.) This claim is predicated upon defendants' alleged violations of the RDFCPA, FDCPA, and RESPA. (Compl. P 57.) These allegations are simply conclusions of law which need not be accepted as true by this court. See *United States ex. rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986)*. The only allegation which plaintiff makes which could be construed as a debt practice is defendants' threatened foreclosure of plaintiff's home. (Compl. P 59.) However, "foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." *Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008)* (quoting *Ines v. Countrywide Home Loans, 2008 U.S. Dist. 88739, 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008)*). Nor does foreclosure meet the requirements of a debt collection within the meaning of the RDFCPA. Id.

As such, defendants' motion to dismiss plaintiff's claims for unfair debt collection is GRANTED.

### I. Unfair Business Practices

Plaintiff's fifth claim asserts that all defendants violated *Section 17200 of the California Business & Professions Code* by engaging in unlawful, unfair, and fraudulent business practices. (Compl. P 62.) Plaintiff predicates this claim on defendants' alleged violations of *California Civil Code § 1632*, RFDCPA, FDCPA, and RESPA. (Compl. P 107.)

The Unfair Competition Law ("UCL"), *California Business and Professions Code §§ 17200, et seq.*, forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." *Cal. Bus. & Prof. Code § 17200*. "The UCL is broad in scope, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal. App. 4th 950, 959, 70 Cal. Rptr. 3d 501 (2008)* (internal citations omitted).

Because plaintiff's UCL claim is predicated upon defendants' alleged violations of *Section 1632*, RESPA, FDCPA, and RFDCPA, for the reasons set forth above, as to these claims, plaintiff's allegations regarding her UCL claim similarly fail to state a basis for relief.

Accordingly, defendants' motion to dismiss plaintiff's UCL claim is GRANTED.

### J. Breach of Fiduciary Duty

Plaintiff's sixth claim for relief, against all defendants, alleges defendants breached their fiduciary duties by allegedly failing to provide her with all disclosures required by law. (Compl.

PP 68-69.) Defendants move to dismiss this claim on the basis that a lending institution does not owe a fiduciary duty to a borrower.

In order to sustain a claim for breach of a fiduciary duty, "a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." *Serrano v. Sec. Nat'l Mortg. Co., 2009 U.S. Dist. 71725 (S.D. Cal. Aug. 14, 2009)* (citing *Shopoff & Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489, 85 Cal. Rptr.3d 268, 285 (Cal. Ct. App. 2008).* "Absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Rangel v. DHI Mortgage Co., Ltd., 2009 U.S. Dist. 65674, at *8 (E.D. Cal. July 20, 2009)*; see also e.g. *Tasaranta v. Homecomings Fin., 2009 U.S. Dist. 87372, at *15 (S.D. Cal. Sept. 21, 2009)*; *Brittain v. IndyMac Bank, FSB, 2009 U.S. Dist. 84863, at * 14 (N.D. Cal. Sept. 16, 2009)*; *Dinsmore-Thomas v. Ameriprise Fin., Inc., 2009 U.S. Dist. 68882, at *29 (C.D. Cal. Aug. 3, 2009)*; *Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn. 52 Cal. App. 3d 484, 488, 489, 125 Cal. Rptr. 549 (1st Dist. 1975)*; *Bradler v. Craig, 274 Cal. App. 2d 466, 473, 476, 79 Cal. Rptr. 401 (2d Dist. 1969).*

Plaintiff's claim for breach of fiduciary duty must fail because plaintiff has not alleged any facts which could create a special circumstance where the defendants, as lenders, owed a fiduciary duty to plaintiff. Plaintiff only alleges that "defendants, and each of them as the lender, trustee, mortgage broker, had[] a fiduciary duty to Plaintiff to advise her. . . ." (Compl. P 68.) Under California law, this is not the type of transaction which creates a fiduciary duty. See, e.g., *Rangel, 2009 U.S. Dist. 65674, at *8.*

Defendants' motion to dismiss this claim is therefore GRANTED.

### K. Breach of Contract

Plaintiff's seventh claim for relief is for breach of contract against defendant Countrywide. (Compl. P 74.) Plaintiff alleges that defendant had a duty to provide a copy of the contract in the Slavic language and that "[t]his failure to disclose, was and is a breach of contract by defendant." Id. To the extent that plaintiff's breach of contract claim is based on a violation of *California Civil Code § 1632* for failure to provide a Slavic language translation of the contract, her claim for breach of contract fails. The court, as noted above, finds that Countrywide had no such duty to provide a copy of the contract in the Slavic language. Therefore, a failure to do so cannot be the basis of a claim for breach of contract. Accordingly, Countrywide's motion to dismiss this claim is GRANTED.

### L. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's eighth claim for relief asserts that Countrywide breached the implied covenant of good faith and fair dealing. Plaintiff specifically alleges that defendants collectively breached the implied covenant of good faith when they: (1) failed to comply with *California Civil Code § 1632*, requiring defendant to provide a copy of the contract in plaintiff's Slavic language; and (2) failed to comply with *15 U.S.C. § 1639(h)*. (Compl. PP 79-80.) To the extent this court has concluded that Countrywide owed plaintiff no duty under *Section 1632* and plaintiff cannot properly plead a claim under *section 1639(h)*, plaintiff's claim for breach of the implied covenant

of good faith and fair dealing must also be dismissed. Defendants' motion is GRANTED as to this claim.

## M. Wrongful Foreclosure

Plaintiff's eleventh claim for relief is a claim for wrongful foreclosure against all defendants. 5 The basis of plaintiff's allegation is that Countrywide has never provided the actual promissory note but only a copy. (Compl. P 94.) Defendants move to dismiss this claim on the ground it is not necessary to produce the original promissory note before proceeding with a non-judicial foreclosure.

5 Plaintiff's complaint couches the claim as one for "unlawful" foreclosure. The court construes this as a claim "wrongful" foreclosure.

*California Civil Code §§ 2924 through 29241* govern non-judicial foreclosures pursuant to a deed of trust. Non-judicial foreclosure may be initiated by a "trustee, mortgagee, or beneficiary, or any of their authorized agents." *Cal. Civ. Code § 2924(a)(1)*. Plaintiff contends that even when the deed of trust designates a party as a trustee or beneficiary and the party complies with the remaining requirements of *Sections 2924 through 29241*, this is not sufficient to demonstrate that a party has the power to foreclose, because the party must also provide the original promissory note. Plaintiff bases his argument, in part, on the requirements of the California Commercial Code. (Compl. P 100-01.)

As noted above, California's non-judicial foreclosure process is governed by a statutory framework that is distinct from the commercial code, *California Civil Code §§ 2924*-29241. The California Civil Code has no requirement that a party demonstrate actual possession of the promissory note. See Champlaie v. BAC Home Loans Servicing, LP, 2009 U.S. Dist. 102285, 2009 WL 3429622, at *12 (E.D. Cal. Oct. 22, 2009) (Karlton, J.) (reviewing several district court opinions and concluding that "so far as this court is aware, the district courts have unanimously concluded that in a non-judicial foreclosure, a party need not demonstrate actual possession of the underlying note"). Because plaintiff's sole allegation supporting the claim for wrongful foreclosure is that the defendants failed to produce the promissory note, plaintiff's claim fails as a matter of law. Defendants' motion to dismiss plaintiff's eleventh claim for relief for wrongful foreclosure is GRANTED.

## N. Civil Conspiracy to Commit Fraud

Plaintiff's fifteenth cause of action is for civil conspiracy to commit fraud against defendant Countrywide. Countrywide moves to dismiss on the ground that plaintiff has failed to allege any facts which could constitute a conspiracy. The court agrees. One of the hallmarks of any conspiracy claim is an agreement between two or more people. Plaintiff's conspiracy claim is directed solely at a single defendant, namely Countrywide. Additionally, plaintiff's accusations are conclusory and totally lacking of factual support. Plaintiff alleges that "[t]hrough their unlawful conduct constituting a civil conspiracy to defraud a vulnerable and immigrant homeowner, defendant Country[wide] acted in a malicious, willful, wanton, and oppressive fashion, in reckless disregard of plaintiffs rights." (Compl. P 134.) This allegation fails to state a

single fact from which this court could conclude that the defendants' actions could possibly constitute a conspiracy to commit fraud.

Accordingly, Countrywide's motion to dismiss plaintiff's fifteenth claim for relief for civil conspiracy to commit fraud is GRANTED.

## O. Declaratory and Injunctive Relief

Plaintiff's tenth cause of action for declaratory and injunctive relief is based upon plaintiff's first nine causes of action which this court has dismissed. As such, plaintiff's tenth claim for declaratory and injunctive relief must also be dismissed.

## P. Leave to Amend

Plaintiff has requested leave to amend her complaint. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *Cal. Architectural Building Prods. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988)*. While leave to amend should be freely given pursuant to *Federal Rule of Civil Procedure 15*, the court is not required to allow *futile* amendments. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983)*. Here, amendment of the complaint with respect to plaintiff's first, second, ninth, and thirteenth claims for relief would be futile under the governing law described above, and plaintiff does not describe any other facts which could plausibly give rise to such claims against defendants. *Iqbal, 129 S. Ct. at 1949*. Therefore, the court denies plaintiff leave to amend with respect to these claims for relief.

However, as to plaintiff's remaining claims, the court cannot find, at this juncture, that plaintiff could not allege *any* set of facts which would support such claims for relief, and thus, leave to amend those claims must be granted. *Fed. R. Civ. P. 15*.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED. Plaintiff's first, second, ninth, and thirteenth claims are dismissed without leave to amend. As to all other claims, plaintiff is granted fifteen (15) days from the date of this order to file a second amended complaint in accordance with this order. Defendants are granted thirty (30) days from the date of service of plaintiff's second amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: March 15, 2010.

/s/ Frank C Damrell

FRANK C. DAMRELL, JR.

UNITED STATES DISTRICT JUDGE

James A. Krage
10418 Ives Street
Bellflower, California 90706
In Propria Persona

# United States District Bankruptcy Court
## Central District of California
## Los Angeles, California

in re: James-Arthur : Krage,

-------------------------------------------------

James-Arthur : Krage,
as an individual, as Real Party in Interest, as
Sole Heir, and as Administrator of the Estate
of Verna Gladys Kroemer Krage,
                    Plaintiff,

            vs.

Christopher L. Boulter, an individual;
Val-Chris Investments, Inc., a corporation;
Bruce R. Beasley, an individual;
RESS Financial Corporation, a corporation;
All persons unknown, claiming any legal or
equitable right, title, estate, lien, or interest
in the property described in the complaint
adverse to Plaintiff's title, or any cloud on
Plaintiff's title thereto;
and DOES 1 THROUGH 5, inclusive,
                    Defendants.

Case No.: 2:08-bk-22336
Chapter 13
Hon: Alan M. Ahart
Courtroom.: 1378

**COMPLAINT TO INVOKE ADVERSARY PROCEEDING UNDER FRBP 7001(2) AFTER VIOLATIONS OF TRUTH IN LENDING ACT, FAIR DEBT COLLECTION PRACTICES ACT, ETC;** FOR JUDICIAL REVIEW OF RESCISSION AND/OR FOR CANCELLATION OF WRITTEN INSTRUMENTS (NOTE AND TRUST DEED), FOR QUIETING TITLE, FOR DECLARATORY JUDGMENT, AND FOR OTHER DAMAGES FOR:

1. RESCISSION OR CANCELLATION FOR LACK OF CONSIDERATION
2. RESCISSION FOR VIOLATION OF TILA NOTICE OF RIGHT TO CANCEL
3. VIOLATION OF 15 USC 1635(b):BY FAILURE TO RETURN MONEY AND ACCEPT RESTITUTION
4. **RESCISSION FOR PADDED CHARGES THAT ARE DECEPTIVE PRACTICES**
5. RESCISSION FOR FAILURE TO GIVE EACH ADULT RESIDENT HAVING EQUITABLE INTEREST A COPY OF THE LOAN DOCUMENTS
6. CANCELLATION OF INSTRUMENTS
7. QUIET TITLE
8. INJUNCTION
9. DECLARATORY RELIEF
10. FRAUD
11. CONSTRUCTIVE FRAUD
12. BREACH OF FIDUCIARY DUTY

---

1

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

13. BREACH OF CONTRACT
14. INTERFERENCE WITH CONTRACT
15. UNJUST ENRICHMENT
16. TRUST FUND MISHANDLING COMINGLING
17. OTHER TILA VIOLATIONS
18. RESPA VIOLATIONS
19. FDCPA VIOLATIONS
20. HOEPA VIOLATIONS
21. VIOLATION OF FIN. CODE 4973(k)
22. VIOLATION OF FIN CODE 22317.5
23. ACCOUNTING
24. NEGLIGENCE
25. VIOLATION OF DUTY OF GOOD FAITH AND FAIR DEALING
26. FALSE ADVERTISING B&P 17200 and 17500

## **INTRODUCTORY ALLEGATIONS**

1.      Debtor/Plaintiff (hereinafter, "Debtor") brings this action to request Adversary

Proceeding during chapter 13 bankruptcy with federal questions to request validation of the

alleged debt, request proof that the debt is secured after rescission, to reiterate and to enforce

their rescission of subject predatory loan and recover for damages and other relief under the

Truth In Lending Act (TILA) Fair Debt Collection Practices Act (FDCPA), the Real Estate

Settlement Procedures Act (RESPA), and other Federal and State Laws.

2.      Plaintiff hereby invokes 28 U.S.C. 1367 to grant this Court of Record

additional Jurisdiction to adjudicate state issues also involved.

3.      Debtor/Plaintiff is a consumer that lives within the jurisdiction of this Court,

where their property is located and all relevant actions have taken place.

4.      Plaintiff James-Arthur : Krage (hereafter, "Krage") is, and at all times relevant

hereto was, an native-born American, one of the people, born and domiciled in Los Angeles

County, California.  Krage is the Sole Heir of the estate of Verna Gladys Kroemer Krage.

Krage is also Administrator of the Estate of Verna Gladys Kroemer Krage, with Letters

2

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

granting full authority. Krage, in his capacity as Administrator, signed the Loan Documents for the Estate. **Krage sues in his capacities as an individual, as Sole Heir, and as Administrator of the Estate. Krage is the real party in interest.**

5.     Upon information and Belief, Defendant Christopher L. Boulter (hereafter "Boulter") is, and at all times relevant hereto was, an individual domiciled in Orange County, California and President of Defendant Val-Chris Investments, Inc. **Boulter is sued in both his corporate and individual capacities.**

6.     Upon information and Belief, Defendant Val-Chris Investments, Inc (hereafter, "Val-Chris") is, and at all times herein mentioned was, a California corporation, with its principal place of business in Irvine, Calif. Upon further information and belief, Val-Chris owns, directs, and/or operates Val-Chris Escrow.

7.     Upon information and Belief, Defendant Bruce R. Beasley (hereafter "Beasley") is, and at all times relevant hereto was, an individual domiciled in southern California and President of Defendant RESS Financial Corporation. **Beasley is sued in both his corporate and individual capacities.**

8.     Upon information and Belief, Defendant RESS Financial Corporation (hereafter, "RESS" or "RESS Financial") is, and at all times herein mentioned was, a corporation with its principal place of business in Norco, Calif. Upon further information and belief, RESS regularly acts as agent for Val-Chris in real property foreclosures.

9.     Plaintiff is ignorant of the true names, capacities and relationships of all the defendants sued herein, including DOES 1 through 5, inclusive, and therefore sues all defendants by fictitious names. Plaintiff will amend this Complaint to allege the true names, capacities and relationships of all Defendants, including DOE defendants when these become known.

10.     Plaintiff alleges upon information and belief that each of the defendants named herein, including DOES 1 through 5, is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as alleged herein were directly and proximately caused by said defendants, including DOE Defendants.

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

**VENUE**

11.     **Venue** is properly before this Court. Most of the events, circumstances, damages and denial of rights described herein took place in Los Angeles County.

12.     Upon information and belief Defendant Boulter is domiciled in Orange County and Defendant Beasley is domiciled in Riverside County or Orange County..

13.     Upon information and belief, Defendants Val-Chris has its principal office in Orange County, RESS Financial has its principal offices in Riverside County and both do substantial business in Los Angeles County.

14.     The property in question, 10418 Ives Street, Bellflower, Calif. 90706, involving the Instruments requested to be cancelled for cause, is located in Los Angeles County.

15.     The Instruments described below were executed in Los Angeles County, Calif.

16.     There exists a certain written instrument that purports to be a promissory note. A copy of the note is attached to this complaint as **Exhibit 1** and incorporated by reference.

17.     There exists a certain written instrument that purports to be a Deed of Trust related to the promissory note. A copy of the Deed of Trust is attached to this complaint as **Exhibit 2** and incorporated by reference.

18.     Both the Note and the Deed of Trust are:

a) **rescindable** for direct violations of TILA, including but not limited to a missing 3-day Notice of Right to Cancel after a delay in Consummation, inaccurate TILA Material Disclosures over the threshold after Foreclosure, lack or failure of consideration by a delay of about 3 months in payment of points to the Broker, consent was given without knowing about Defendants' misrepresentation, concealment, and fraud in the inducement, etc.

b) **voidable** for unilateral mistake, misrepresentation of a material fact, fraud in the inducement, concealment, duress (not knowing character of the transaction), undue influence, with unconscionable results: specifically, Misrepresentations in the Truth in Lending Act

---

4

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

1 | (hereinafter "TILA") required Disclosures and for Breach of Contract, Breach of Fiduciary

2 | Duty, Negligence, Trust Fund Mishandling, and for other reasons, as specified below.

3 |

4 | **SHORT STATEMENT OF FACTS**

5 | 19.   This case is an attempt to limit a high cost predatory Lender who preys upon

6 | people of limited means through loans with unconscionably high interest rates and excessive

7 | padded fees.  Such predatory loans have a strong tendency to force people to leave their

8 | homes.  Indications are that the Lender never expected this loan to be repaid.  Instead the

9 | Lender expected to get Plaintiff's house for much less than the fair market value of the house

10 | after extracting as much money as possible from the borrower in monthly payments, which

11 | money the Borrower was expected to pay in a desperate but futile attempt to avoid the

12 | inevitable.  The Lender has broken Federal laws, including TILA, RESPA, FDCPA, HOEPA,

13 | and has broken California laws, including the Calif. Finance Code and the Calif. Business &

14 | Professions Code.  The Lender flatly refuses to obey the rescission procedures specified in

15 | TILA.   The Lender acts in total disregard for Federal Law -- TILA, RESPA, FDCPA -- and

16 | with the assistance of a lawyer and a foreclosure agent appears to blatantly and willfully

17 | violate RESPA, FDCPA and TILA.   The Lender, in his lawyer's letter of April 23, 2008,

18 | refuses Plaintiff's Offer of Restitution of April 17, 2008 and makes a counteroffer.   Plaintiff

19 | should not be required to re-offer restitution after Defendants' blatant refusal to accept an

20 | overt "Offer of Restitution".   Without any Security Right after Rescission, the Lender is still

21 | attempting unlawful Foreclosure, and must be enjoined immediately from proceeding.

22 | Exhibits 1 through **43** are incorporated here by reference.

23 |

24 | **II.**

25 | **ALLEGATIONS COMMON TO ALL CAUSES**

26 | 20.   On May 3, 2007, Plaintiff Krage signed a Promissory Note for $350,000

27 | **(Exhibit 1)**, a Deed of Trust **(Exhibit 2),** and other Documents in exchange for what Krage

28 | had been led to believe would be $350,000 that would be placed into an Escrow Account

1    with SLT Escrow (SLT Escrow account # AKA 1146-SLT2) by Defendants Boulter and Val-
2    Chris.  The other documents included documents describing Broker fees, Escrow fees and
3    other fees.

4         21.    The real property in question is Plaintiff Krage's Principal Residence.

5         22.    The loan in question was primarily for non-commercial purposes.

6         23.    On May 10, 2007 Defendant Val-Chris wired only $330,866.13 to Southland
7    Title for SLT Escrow account # AKA 1146-SLT2.  At that time, Plaintiff Krage did not know
8    that SLT Escrow had only received partial funding.  Krage did not discover this until near
9    the end of 2007, although he had requested it in QWRs multiple times.

10        24.    Later in May 2007, Plaintiff Krage discovered that the full Broker's
11   commission specified in the loan documents that Krage had signed on May 3, 2007 had not
12   been paid to the Broker, SLT Mortgage.  Krage immediately sent Defendant Val-Chris
13   Qualified Written Requests (hereinafter, "QWR") under RESPA to address that issue and
14   other issues.

15        25.    RESPA is the federal Real Estate Settlement Procedures Act, (12 USC
16   §§2601-2617), Dept. of Housing and Urban Development Regulation X at 24 C.F.R. 3500,
17   and the Gramm Leach Bliley Act.

18        26.    The QWRs, dated May 16, 2007 **(see Exhibit 17)** and May 17, 2007 **(see**
19   **Exhibit 18),** asked why the Broker (SLT Mortgage) had not been paid, requested that
20   Defendants not breach the loan contract, and requested that Defendants insure that the Broker
21   was paid, so that Defendants did not interfere in the Performance of the Borrower's Contract
22   with the Broker.

23        27.    Defendants violated RESPA by not answering Plaintiff's RESPA QWR
24   requests in a timely manner.  Defendants did not explain why Defendants had not paid the
25   Broker and Agent (SLT Mortgage) when the loan was partially funded on May 10, 2007.
26   Defendants did not say when the Broker and Agent (SLT Mortgage) would be paid.  Nor did
27   Defendants comment on the potential Breach of Contract and Interference in the Performance
28   of a Contract issues alleged in the RESPA QWRs.

28.     Plaintiff Krage wrote further QWRs in June, July and August 2007 asking why the Broker was not paid, requesting that the Broker be paid and requesting compensation for interest Plaintiff Krage had paid on unfunded monies.

29.     Defendants Boulter and Val-Chris violated RESPA by not timely addressing the issue of when the Broker would be paid and by not timely addressing the question of interest Krage paid on unfunded amounts.

30.     Plaintiff Krage wrote a further QWR on September 20, 2007, asking why Defendants had refused to answer Plaintiff's Requests to state when the Broker was paid, and asking why Defendants refused to address Plaintiff's request for a refund of overpayment because of interest charged for late-funded monies.

31.     Defendants violated RESPA by not making a timely answer to the issue of when the Broker was paid, or to the issue of overpayment for interest on unfunded monies, as requested in Plaintiff's September 2007 QWR.

32.     Plaintiff wrote a further Qualified Written Request ("QWR") under RESPA on October 19, 2007 asking when Funding Completed. **(Exhibit 19)**

33.     On October 29, 2007, Defendants Chris Boulter and Val-Chris deliberately and falsely stated in writing that "The full loan amount of $350,000 was wired to the Title Company on or before May 10, 2007." **(Exhibit 20)**

34.     On November 20, 2007, Plaintiff Krage wrote a further QWR under RESPA exposing the lie in Defendants' October 29, 2007 answer and stating that **Escrow did not show a wire for the full $350,000 amount of the loan. (Exhibit 21)**

35.     On November 21, 2007 Southland Title, the Title Company for the mortgage transaction, sent Plaintiff Krage a letter concerning the Wire Transfer to SLT Escrow that Southland Title supervised. The letter stated, "We received a wire in the amount of $330,866.13 on 5/10/07 from Val Chris Investments, Inc, the lender." **(Exhibit 22)**

36.     On November 26, 2007, Defendants Boulter and Val-Chris wrote an answer to Plaintiff's QWR RESPA Request and enclosed a copy of a Val-Chris Investments, Inc. "General Account" check for $19,133.87 that was written to a captive Val-Chris Escrow

7

1   account, not to the neutral SLT Escrow account. **(Exhibit 23)**

2       37.    On January 2, 2008, Plaintiff Krage sent Defendants a Notice of Rescission

3   of Contract **(Exhibit 24)** including, but not limited to, the following wording:

> "Hereby give notice that said Promissory Note, and subsequently the Trust Deed and
> all other documents, executed on May 3, 2007, are hereby rescinded for multiple
> reasons including misrepresentation, fraud, Truth-in-Lending violations, and errors in
> the notice of the 3 day right of rescission.   Lender Val-Chris appears to also have
> breeched contract, violated RESPA law, received unjust enrichment, and interfered in
> the performance of a contract, and  Val-Chris subsequently  and mitigate damages,
> and therefore, under the provisions of California Civil Code §§1689(b)(1), 1689(b)(5),
> the Note, and subsequently the Trust Deed and other loan documents, is hereby
> rescinded.
> This notice shall be deemed effective as of the date of its receipt by Val-Chris or its
> successor in interest.
> The Borrower files this Rescission reluctantly, after giving 11 Qualified Written
> Request Notices of Breach of Contract, actions to violate TILA, and Interference in
> the Performance of a Contract, among other things, with Opportunity to Cure,
> specifically citing the problems of untimely, withheld payments to the broker, among
> other items   Borrower believes that he has no other recourse with this uncooperative
> lender."

13      38.   On January 7, 2008, Plaintiff Krage filed a Rescission of Deed with the L.A.

14  County Recorder under Calif. Civil Code sections 1689(b)(1) and 1689(b)(5). **(Exhibit 25)**

15      39.   On January 11, 2008 **(see Exhibit 26),** and again on January 18, 2008 **(see**

16  **Exhibit 27),** Plaintiff Krage wrote QWRs to Defendants Boulter and Val-Chris. The QWRs:

17  (1) asked for a copy of the check to the Broker;  (2) asked about previous disciplinary action

18  against Defendants by the California Department of Real Estate;  (3) outlined the multiple

19  misrepresentations Defendants had made;  **(4) offered to renegotiate a new loan** and;  (5)

20  asked Defendants not to damage Plaintiff further by filing a Notice of Default after the

21  Rescission.

22      40.   On January 21, 2008 Defendant Val-Chris sent Plaintiff Krage copies of checks

23  Val-Chris wrote to SLT Mortgage on June 29, 2007 and July 30, 2007. **(See Exhibit 28)**

24  These checks, written on Val-Chris Investments, Inc.'s "General Account", proved that:  (1)

25  Val-Chris did not fully fund the Krage loan on May 10, 2007;  (2) Val-Chris did not fully pay

26  the broker's fees to SLT Mortgage on May 10, 2007 and;  (3) **Val-Chris in fact paid broker**

27  **SLT Mortgage directly out of the proceeds of Plaintiff Krage's first two mortgage**

28  **payments.**

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

41. On January 23, 2008, Defendants, through their agent, RESS Financial Corp., filed a Notice of Default on the Krage loan with the L.A. County Recorder. Krage did not receive a copy of the Notice of Default until several days later.

42. On January 26, 2008, Plaintiff Krage sent Defendants a QWR, requesting

"copies of all ledger entries for my separate Escrow Account with Val-Chris, especially showing when the monies were deposited, when the monies were moved to the General Account., any other activity in my separate Escrow Account, and showing Proof that my Escrow Account was separate from all other Escrow Accounts."

43. The January 26, 2008 QWR **(Exhibit 29)** also explained Defendants' Misrepresentations and Damages to Plaintiff, and **again offered to work out an agreement.**

44. On January 28, 2008, Defendants had the Notice of Default mailed to Plaintiff Krage, with Notice that it was an action to collect a debt, and that Krage could dispute the debt under FDCPA. **(Exhibit 30)** FDCPA is the federal Fair Debt Collection Practices Act (15 USC 1692 et seq.).

45. On January 30, 2008, Plaintiff sent a QWR to Defendants and a Dispute of the Debt under FDCPA to Defendants and to their agent, RESS Financial. **(Exhibit 31)**

46. On February 8, 2008, Plaintiff mailed a Notice and Demand to Defendant Val-Chris. **(Exhibit 32)** The Notice and Demand summarized Val-Chris's duties under the Truth in Lending Act during the rescission process, **and also contained an offer of restitution.** Val-Chris ignored the Notice and Demand, ignored the offer of restitution, and has refused to obey the TILA rescission rules even up to the present date.

47. On February 19, 2008, Defendant Val-Chris' attorney Geraci mailed a Letter to Plaintiff Krage alleging that Krage's QWRs were harassment. Geraci also stated a pre-disposition to deliberately ignore further Krage QWRs. **(See Exhibit 33)** The letter was dated February 14, 2008 but postmarked February 19, 2008. Geraci never offered any explanation for this five-day delay.

48. On February 21, 2008, Plaintiff Krage mailed a QWR to Val-Chris' attorney Geraci, requesting specific information to explain errors in the servicing of the Krage loan. **(See Exhibit 34)**

9

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

49. On February 21, 2008, Defendants Boulter and Val-Chris, through their agent RESS Financial, mailed Plaintiff Krage a second Notice of Default with Notice that it was an action to collect a debt.  This violated many parts of the Fair Debt Collections Practices Act (FDCPA), including sections 15 USC 1692g(b), 15 USC 1692e(8), 15 USC 1692e(2), 15 USC 1692c(c), 15 USC 1692k(c). and possibly violated RESPA, 12 USCA  2605 (e)(3), TILA, and other laws protecting the consumer after Rescission and Dispute of Debt. **(See Exhibit 35)**

50.  On February 27, 2008, Plaintiff Krage mailed to Attorney Geraci two documents   These documents were:

a)  a letter **(See Exhibit 36)** advising:

> "Geraci is taking a position that may have significant legal consequences. It is one thing for Val-Chris to violate the law perhaps inadvertently.    It is a more serious thing for Geraci to specifically advise Val-Chris to deliberately violate Federal law, and for Val-Chris to knowingly act on such advice."

and b)  a QWR and second Dispute of Debt **(see Exhibit 37),** which disputed the debt under the FDCPA, requested validation under the FDCPA, requested specific information to explain other errors in the servicing of the loan, and defaulted Val-Chris for not acknowledging Krage's January 30, 2008 QWR.

51.  On March 4, 2008 Plaintiff Krage mailed both to Defendant Val-Chris and to Val-Chris' RESPA attorney Geraci a FIRST AMENDED NOTICE OF RESCISSION OF CONTRACT **(see Exhibit 38),** which included but was not limited to the following wording**:**

> "In a letter from the Lender's Lawyer, concerns were expressed:    this amended notice addresses those concerns.
>
> Specifically, after the Borrower signed loan documents on May 3, 2007, the lender requested 3 additional Disclosures from the Borrower, which Borrower supplied on May 7 and May  8, 2007.   Consequently, consummation by the Lender did not occur until about May 9, 2007, and a Notice of Right to Cancel with a cutoff date of about May 14, 2007 should have been supplied, but was not.   As a result the Right to Cancel under TILA was extended for 3 years. (Exhibits were supplied in Borrower's QWR letter of 2/27/08).

10

Additionally, charges were included in the Prepaid Finance Charge that were specifically excluded by 12 C.F.R 226.4(c)(7) and 15 USC § 1605(e)(2)..(e.g. Escrow, Sub-Escrow, Doc Prep, Loan Tie In, Notary).   This caused the "Amount Financed" to be understated in the TILA Disclosure by at least $1,375, giving a second right to rescission under TILA, especially after Lender's filing of a Notice of Default on 1/23/08.

Other Padded Fees (Secret Profits), etc are Misrepresentation, grounds for Rescission under California Law.

Also, Lender Val-Chris appears to have breached contract, violated the Real Estate Settlement Practices Act, mishandled trust funds, breached fiduciary duties, committed fraud as a cover-up, received unjust enrichment, interfered in the performance of a contract, and violated the Fair Debt Collection Practices Act.  Val-Chris failed to cure these defects and mitigate damages after many offers of Opportunities to Cure, including a final Notice and Demand sent 2/1/08, which Val-Chris has now defaulted in answering. Therefore, under the provisions of California Civil Code sections 1689(b)(1), 1689(b)(5), 1689(b)(7), and 12 C.F.R. 226.23 the Note, and subsequently the Trust Deed and other loan documents, is hereby rescinded."

52.  Plaintiff has been in contact with broker Juan Sayles of SLT Mortgage to try to get a loan to cover an expected Payoff Demand Statement of about $305,000.

53. On April 15, 2008, Plaintiff's Broker SLT Mortgage received a Beneficiary's Demand for Payoff for $393,764.61 from Defendant Val-Chris **(Exhibit 39).** The Beneficiary Demand was much higher than the expected demand of about $305,000 that was required if Val-Chris had returned all the money Krage paid in the mortgage transaction. Full return of Krage's money was required by TILA, 15 USC 1635(b), after the January 2, 2008 Rescission.  The April 15, 2008 Beneficiary's Demand obviously violated TILA.

54. On April 17, 2008, Plaintiff made a final "Offer of Restitution" **(Exhibit 40),** requesting the Lender to provide a Payoff Demand Statement that reflects a return of money paid in the transaction, so that Plaintiff could pay the balance with a loan.  Such an overt offer is not required by TILA until the Lender acknowledges the Rescission and offers to return all money paid in the transaction, but Plaintiff offered it anyway in Good Faith, because Plaintiff had been unable to get Val-Chris to return the money paid in the transaction, as required by TILA, 15 USC 1635(b), after Rescission.

55. On April 23, 2008, Lender's lawyer Geraci wrote a letter **(Exhibit 41)** refusing to acknowledge the Rescission, apparently refusing to offer a Payoff Demand Statement for about $305,000 to return all money paid in the transaction, and apparently making a counter-

11

offer of $309,000 if the Plaintiff agrees to sign an Agreement to "release all claims". A counteroffer is a refusal of the original offer. **When a Lender (Defendant Val-Chris) refuses an explicit Offer of Restitution, the Truth in Lending Act, 15 USC 1635(b), provides that the Borrower (Plaintiff Krage) is excused from restitution.**

56. **On May 7, 2008, RESS Financial posted and sent "Notice of Trustee's Sale Under Deed of Trust" dated April 25, 2008 (Exhibit 42), with the sale date set for May 28, 2008, after failing to Validate the Debt under the FDCPA, and after Val-Chris lost its security interest after Rescission**

## DISCLAIMER REGARDING EXHIBITS

57. The exhibits to this complaint are in separate "Exhibit Packs." The exhibits are numbered consecutively, beginning with Exhibit 1, and continuing in sequence through the end of a given Exhibit Pack, and then sequentially on through the next Exhibit Pack.

58. The Exhibits are presented to provide the court with many of the significant documents that exist in relationship to the mortgage in question.

59. **However, Plaintiff disputes the accuracy of some of the exhibits that originated from sources other than the Plaintiff. Therefore, exhibits from sources other than the Plaintiff are not necessarily presented to prove the truth of the matters contained therein.**

## III

## FIRST CAUSE OF ACTION

## RESCISSION FOR LACK OF CONSIDERATION

[Against all Defendants, and each of them, including DOE Defendants]

60. Paragraphs 1 through **56** above are repeated and incorporated by reference.

61. Defendants advertised that they would fund a loan for $350,000 in exchange for the signing of a Promissory Note and Trust Deed, among other papers. Defendants did not fund all $350,000 as promised on May 10, 2007, but instead moved $19,337.16 into a non-neutral escrow account, so that they could use part of it, then paid the "Loan Origination

1  Fees" (Points in the Pre-Paid Finance Charge) to the broker, SLT Mortgage, from the first 2

2  payments made by the borrower.  This was short-funding and lack of consideration,

3  intentionally caused by Plaintiffs Boulter and Val-Chris.

4      62.    Plaintiff was harmed by Defendants' actions.

5      63.    Defendants, and each of them, including DOE Defendants, acted negligently,

6  recklessly, maliciously, oppressively, and with deliberate indifference to the possibility that

7  Plaintiff Krage might be harmed, damaged, or denied his legal rights.

8      64.    Plaintiff Krage demands that the Note and the Deed of Trust at issue in this

9  action be rescinded and/or cancelled.

10      65.    Plaintiff demands compensatory damages, statutory damages, general

11  damages, punitive damages, and such other relief as is just.

12

13  <center>**IV**</center>

14  <center>**SECOND CAUSE OF ACTION**</center>

15  <center>**RESCISSION FOR VIOLATION OF**</center>

16  <center>**TILA NOTICE OF RIGHT TO CANCEL**</center>

17      [Against Defendants Boulter, Val-Chris and DOE Defendants, and each of them]

18      66.    Paragraphs 1 through **56** above are repeated and incorporated by reference.

19      67.    On May 3, 2007, Plaintiff Krage signed a Promissory Note for $350,000

20  **(Exhibit 1)**, a Deed of Trust **(Exhibit 2)**, and other Documents in exchange for what Krage

21  had been led to believe would be $350,000 that would be placed into an Escrow Account

22  with SLT Escrow (SLT Escrow account # AKA 1146-SLT2) by Defendants Boulter and Val-

23  Chris. The other documents included documents describing Broker fees, Escrow fees and

24  other fees.

25      68.    The property in question, 10418 Ives Street, Bellflower, CA is Plaintiff

26  Krage's Principal Residence. The loan in question was primarily for non-commercial

27  purposes.

28

<center>13</center>
<center>ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION</center>

69.     Defendant Boulter was and is the President of Defendant Val-Chris Investments. Boulter ordered, directed, managed and supervised the full range and scope of daily activities of Defendant Val-Chris during all times relevant to this cause of action.

70.     Defendant Val-Chris was the Lender in the mortgage transaction. Val-Chris, through Val-Chris Escrow, also acted as an escrow agent in the mortgage transaction.

71.     Defendants, and each of them, had a duty to obey all relevant Federal and California laws at all times during the entire course of the mortgage transaction. Defendants, and each of them, knew or should have known of this continuing duty to obey all relevant Federal and California laws because Defendants, and each of them, frequently make, process, service, and deal with mortgages and Deeds of Trust.

72.     Under TILA, Plaintiff Krage had a right to receive a 3-day Notice of Right to Cancel on May 3, 2007, the day he signed the loan documents, and Plaintiff did in fact receive such a notice on that day.

**73.**     Val-Chris' own documents, specifically the "AGREEMENT TO PROCURE A LOAN & LENDER-BORROWER ESCROW INSTRUCTIONS" **(Exhibit 8)** and Val-Chris' pre-funding requirements **(Exhibit 6)** that were captioned as "Exhibit C" attached to the loan procurement agreement, indicated that **Val-Chris was not irrevocably committed to the loan contract on May 3, 2007.**

74.     Paragraph 1.3 of the loan procurement agreement stated:

> "1.3 LOAN approval is in the discretion of the
> LENDER. THIS AGREEMENT IS NOT A LOAN COMMITMENT
> UNTIL LENDER SIGNS THIS AGREEMENT, THEREBY
> ACKNOWLEDGING ITS COMMITMENT TO MAKE THE LOAN UNDER
> THE CONDITIONS OF THIS AGREEMENT."

75.     The pre-funding requirements **(Exhibit 6)** were a detailed and specific list of actions and documents that Defendant Val-Chris demanded on May 3, 2007 as absolute conditions for the funding of the loan.

14

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

76.   **Several days after May 3, 2007 lender Val-Chris unilaterally imposed a new requirement for 3 additional disclosures from Plaintiff Krage,** and further conditioned the funding of the loan upon receiving satisfactory answers to the newly demanded disclosures.

77.   Val-Chris's unilateral imposition of new demands for disclosure again showed Val-Chris' lack of commitment to the May 3, 2007 understandings.

78.   Borrower Krage supplied the answers to the newly demanded disclosures on May 7 and May 8, 2007.  Therefore consummation by the Lender Val-Chris could not occur any earlier than May 8, 2007, nor was Lender Val-Chris irrevocably bound and committed to funding the loan any earlier than May 8, 2007.   A second 3-day Notice of Right to Cancel **with an expiration date of either May 11 or May 14, 2007** should have been issued, but **the second, later dated 3-day Notice of Right to Cancel was never given by Val-Chris nor received by Krage.**.  Instead, the loan was mostly funded on May 10, 2007.  Therefore, the Right to Cancel under TILA was extended for 3 years.

79.   On January 2, 2008, Plaintiff sent Defendants a "Notice of Rescission of Contract".  **(See Exhibit 24)**

80.   On January 7, 2008, Plaintiff filed a "Rescission of Deed" **(see Exhibit 25)** with the L.A. County Recorder under California Civil Code §§1689(b)(1) and 1689(b)(5).

81.   On March 4, 2008 Plaintiff mailed to both Val-Chris and to Val-Chris' RESPA attorney Geraci a "First Amended Notice Of Rescission Of Contract".  **(Exhibit 38)**

82.   Under the TILA three-year extension of Plaintiff Krage's Right to Cancel, the Notice of Rescission of Contract, the Rescission of Deed, and the First Amended Notice of Rescission of Contract are all of them timely.

83.   Plaintiff rescinded for TILA violations and under California Civil Code 1689(b)(7):

84.     California Civil Code 1689(b)(7) Under the circumstances provided for in Sections 39, 1533, 1566, 1785[FN1], 1789[FN2], 1930 and 2314 of this code, Section 2470 of the Corporations Code[FN3], Sections 331, 338, 359, 447, 1904 and 2030 of the Insurance Code **or any other statute providing for rescission.**

85.     Plaintiff Krage was harmed, damaged and denied his legal rights by Defendants' failure to give him a second, later dated Notice of Right to Cancel as was required by TILA.

86.     Defendants, and each of them, including DOE Defendants, acted negligently, recklessly, maliciously, oppressively, and with deliberate indifference to the possibility that Plaintiff Krage might be harmed, damaged, or denied his legal rights.

87.     Plaintiff Krage demands that the Note and the Deed of Trust at issue in this action be rescinded and/or cancelled.  Plaintiff demands compensatory damages, statutory damages, general damages, punitive damages, and such other relief as is just.

## V.

### THIRD CAUSE OF ACTION

### VIOLATION OF 15 U.S.C. 1635(b) BY

### FAILURE TO RETURN MONEY AND ACCEPT RESTITUTION

[Against all Defendants, and each of them, including DOE Defendants]

88.     Paragraphs 1 through **56** above are repeated and incorporated by reference.

89.     On May 3, 2007, Plaintiff Krage signed a Promissory Note for $350,000 **(Exhibit 1)**, a Deed of Trust **(Exhibit 2),** and other Documents in exchange for what Krage had been led to believe would be $350,000 that would be placed into an Escrow Account with SLT Escrow (SLT Escrow account # AKA 1146-SLT2) by Defendants Boulter and Val-Chris.  The other documents included documents describing Broker fees, Escrow fees and other fees.

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

90.     The property in question, 10418 Ives Street, Bellflower, CA is Plaintiff Krage's Principal Residence.  The loan in question was primarily for non-commercial purposes.

91.     Defendant Boulter was and is the President of Defendant Val-Chris Investments.  Boulter ordered, directed, managed and supervised the full range and scope of daily activities of Defendant Val-Chris during all times relevant to this cause of action.

92.     Defendant Val-Chris was the Lender in the mortgage transaction.  Val-Chris, through Val-Chris Escrow, also acted as an escrow agent in the mortgage transaction.

93.     Defendant Beasley was and is the President of Defendant RESS Financial Corp.  Beasley ordered, directed, managed and supervised the full range and scope of daily activities of RESS Financial during all times relevant to this cause of action.

94.     Defendant RESS Financial Corp. regularly acts, and in this case acted, as agent for Val-Chris in real property foreclosures.

95.     Defendants, and each of them, had a duty to obey all relevant Federal and California laws at all times during the entire course of the mortgage transaction.  Defendants, and each of them, knew or should have known of this continuing duty to obey all relevant Federal and California laws:  (1) because Defendants Boulter and Val-Chris, and each of them, frequently make, process, service, and deal with mortgages and Deeds of Trust,  (2) because Defendants Beasley and RESS Financial regularly acts as an agent in real property foreclosures, and  (3) because there was and is regular communication among all Defendants.

96.     On January 2, 2008, Plaintiff sent Defendants a "Notice of Rescission of Contract".  **(Exhibit 24)**  On January 7, 2008, Plaintiff filed a "Rescission of Deed" **(Exhibit 25)** with the L.A. County Recorder under California Civil Code §§1689(b)(1) and 1689(b)(5).  On March 4, 2008 Plaintiff mailed to both Defendant Val-Chris and to Val-Chris' RESPA attorney Geraci a "First Amended Notice Of Rescission Of Contract".  **(Exhibit 38).**

97.   Under the TILA three-year extension of Plaintiff Krage's Right to Cancel, the Notice of Rescission of Contract, the Rescission of Deed, and the First Amended Notice of Rescission of Contract are all of them timely.

98.   Under the TILA rescission procedure, 15 USC 1635(b), the creditor's security interest becomes void and the creditor has 20 days to take any necessary action to reflect the voiding of the security interest. Instead, on or about January 4, 2008 Defendant Val-Chris sent Plaintiff Krage a letter flatly rejecting the rescission.

99.   On January 28, 2008 and February 21, 2008 Val-Chris, acting through its agent, RESS Financial, sent Krage a Notice of Default, which is the first step toward non-judicial foreclosure as a means of enforcing the security interest in Krage's property, even though the security interest is void. **(See Exhibits 30 and 35).**

100.   On or about April 25, 2008 Defendant Val-Chris, acting through its agent, Defendant RESS Financial, filed a Notice of Sale with the LA County Recorder. **(See exhibit 42).** The Notice of Sale is the second step toward non-judicial foreclosure as a means of enforcing the security interest in Krage's property, even though the security interest is void.

101.   The Notice of Sale specified **May 28, 2008** as the date for the Foreclosure Sale of Plaintiff Krage's property.  A Foreclosure Sale is the third and most critical step toward non-judicial foreclosure as a means of enforcing the security interest in Krage's property, even though the security interest is void.

102.   Under the TILA rescission procedure, 15 USC 1635(b), Defendant Val-Chris had a duty to return to Plaintiff Krage all money that Krage had paid in monthly payments and all money that Krage had paid in costs and fees related to the mortgage.  Krage is also released from any obligation to pay interest, late charges, finance charges, prepayment penalties, or any other charges or fees related to the mortgage.

103.   Plaintiff Krage calculates that Defendants would have been required to return about $45,000 and that the remaining principal balance of the mortgage would have been about $305,000 if Val-Chris had fully cooperated with the TILA rescission procedure.

104. The typical way for Defendant Val-Chris to return the money required in a TILA rescission would have been to issue a Payoff Demand Statement/ Beneficiary Demand Statement that reduced the principal balance of the mortgage to approximately $305,000.

105. Plaintiff Krage, acting in the spirit of 15 USC 1635(b), made repeated offers of restitution and/ or restoration to Defendant Val-Chris even though Krage was not required to offer restitution until **after** Val-Chris had returned the required money and released the security interest in Krage's property. Val-Chris repeatedly ignored or rejected Krage's offers of restitution/ restoration.

106. After repeated outright rejections of Plaintiff Krage's right to rescission, on April 15, 2008 Defendant Val-Chris sent Krage's broker, SLT Mortgage, a Beneficiary Demand for more than $393,000. **(See Exhibit 39)** Plaintiff Krage rejected such an outrageous and illegal amount, and asked for a reduced Payoff Demand Statement in his letter of April 17, 2008 **(See Exhibit 40)**

107. On April 23, 2008 Val-Chris' attorney Geraci sent Plaintiff Krage an offer to release the security interest under the following conditions: (1) Krage would have to pay $309,000 cash by May 14, 2008; (2) Krage would have to release Val-Chris from any liability for damages in relation to the mortgage. **(See Exhibit 41).**

108. Val-Chris' April 23, 2008 offer is still higher than the TILA-required restitution amount of about $305,000 and imposes an illegally short deadline and demands a release from lender liability that is not mentioned in the TILA statute. **(See Exhibit 41)**

**109. Courts have regularly ordered a recalcitrant lender who refuses to cooperate with the TILA rescission procedure to forfeit all money involved in the loan.**

110. Plaintiff Krage was harmed, damaged and denied his legal rights by Defendants Boulter and Val-Chris' failure to cooperate with the TILA rescission procedure as stated in 15 USC 1635(b).

111.   Plaintiff Krage was particularly harmed, damaged and denied his legal rights by Defendants Boulter and Val-Chris' unconscionable multi-month delay since January 2, 2008 in implementing the creditor's return of money required by TILA, by Boulter and Val-Chris' relentless predatory pressure toward foreclosing on Krage's property despite the voiding of the security interest by the rescission statute, and by Defendants Beasley and RESS Financial's assistance of Val-Chris in Val-Chris' unlawful attempt to foreclose.

112.   Defendants, and each of them knew, of the January 2, 2008 Notice of Rescission of Contract, knew of the March 4, 2008 First Amended Notice of Rescission of Contract, and knew of the publicly recorded January 7, 2008 Rescission of Deed, but deliberately ignored all these documents.

113.   Defendants, and each of them, including DOE Defendants, acted negligently, recklessly, maliciously, oppressively, and with deliberate indifference to the possibility that Plaintiff Krage might be harmed, damaged, or denied his legal rights.

114.   Plaintiff Krage demands that the Note and the Deed of Trust at issue in this action be rescinded and/or cancelled.

115.   As a further penalty for Defendants Boulter and Val-Chris' intransigence, Plaintiff demands that he be excused from any obligation of restitution, and that Boulter and Val-Chris shall forfeit the entire amount of the mortgage.

116.   Plaintiff demands compensatory damages, statutory damages, general damages, punitive damages, and such other relief as is just.

**FOURTH CAUSE OF ACTION**

**RESCISSION FOR PADDED CHARGES**

**THAT ARE DECEPTIVE PRACTICES**

[Against all Defendants, and each of them, including DOE Defendants]

117.   Paragraphs 1 through **56** above are repeated and incorporated by reference.

118.   Defendants advertised that they would fund a loan for $350,000 in exchange for the signing of a Promissory Note and Trust Deed, among other papers.   It appears that Defendants Boulter and Val-Chris padded some charges deceptively and did not fund all $350,000 as promised on May 10, 2007, but instead moved $19,337.16 into a non-neutral escrow account, so that they could use part of it, then paid the "Loan Origination Fees" (Points in the Pre-Paid Finance Charge) to the broker, SLT Mortgage, from the first 2 payments made by the borrower.   The padding of charges gave Defendants secret profits not revealed to the Plaintiff and was intentionally caused by Defendants Boulter and Val-Chris.

119.   Plaintiff was harmed by Defendants' actions.

120.   Defendants, and each of them, including DOE Defendants, acted negligently, recklessly, maliciously, oppressively, and with deliberate indifference to the possibility that Plaintiff Krage might be harmed, damaged, or denied his legal rights.

121.   Plaintiff Krage demands that the Note and the Deed of Trust at issue in this action be rescinded and/or cancelled.

122.   Plaintiff demands compensatory damages, statutory damages, general damages, punitive damages, and such other relief as is just.

## FIFTH CAUSE OF ACTION
## RESCISSION FOR FAILURE TO GIVE EACH ADULT RESIDENT HAVING
## EQUITABLE INTEREST A COPY OF THE LOAN DOCUMENTS

[Against all Defendants, and each of them, including DOE Defendants]

123.   Paragraphs 1 through **56** above are repeated and incorporated by reference.

124.   On May 3, 2007 in the Statement of Information **(Exhibit 10)** Plaintiff Krage disclosed to Defendants Boulter and Val-Chris that he was married to Patricia Ann Mele-Krage (hereinafter, "Patricia") and that he had two adult daughters, Shauna Marie Christina Krage and Jessica Vanessa Crystal Krage (hereinafter, "Vanessa").  Both Patricia Krage and Vanessa Krage are adults living at 10418 Ives St.  Bellflower, California 90706.

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

125. Patricia Ann Mele-Krage would have equitable interest in the property as my wife when probate is completed, and daughter Vanessa Krage could also under have an equitable interest in the property under some circumstances.

126. Defendants Boulter and Val-Chris failed to supply Patricia Krage and Vanessa Krage with any Notice of Right to Cancel. Therefore Plaintiff has a right to rescind under TILA.

127. Plaintiff was harmed by Defendants' actions.

128. Defendants, and each of them, including DOE Defendants, acted negligently, recklessly, maliciously, oppressively, and with deliberate indifference to the possibility that Plaintiff Krage might be harmed, damaged, or denied his legal rights.

129. Plaintiff Krage demands that the Note and the Deed of Trust at issue in this action be rescinded and/or cancelled.

130. Plaintiff demands compensatory damages, statutory damages, general damages, punitive damages, and such other relief as is just.

## SIXTH CAUSE OF ACTION
## CANCELLATION OF INSTRUMENTS

[Against all Defendants and Doe Defendants, and each of them]

131. Paragraphs 1 through **56** are repeated here and incorporated by reference.

132. The Note **(Exhibit 1)** and Deed of Trust **(Exhibit 2)** are **voidable** for unilateral mistake, misrepresentation of a material fact, fraud in the inducement, concealment, duress (not knowing character of the transaction), undue influence, with unconscionable results: specifically, Misrepresentations in the Truth in Lending Act (hereinafter "TILA") required Disclosures and for Breach of Contract, Breach of Fiduciary Duty, Negligence, Trust Fund Mishandling, and for other reasons, as specified below.

133. Plaintiff was harmed by Defendants' actions.

134.   Defendants, and each of them, including DOE Defendants, acted negligently, recklessly, maliciously, oppressively, and with deliberate indifference to the possibility that Plaintiff Krage might be harmed, damaged, or denied his legal rights.

135.   Plaintiff Krage demands that the Note and the Deed of Trust at issue in this action be rescinded and/or cancelled.

136.   Plaintiff demands compensatory damages, statutory damages, general damages, punitive damages, and such other relief as is just.

## SEVENTH CAUSE OF ACTION
## QUIET TITLE

[Against Defendants Boulter, Val-Chris, Beasley, RESS Financial, and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto, and DOE Defendants, and each of them]

**137.**   Paragraphs 1 through **56** above are repeated here and incorporated by reference.

138.   Plaintiff Krage is the Administrator of the Estate of Verna Gladys Kroemer Krage, which is the sole owner of title of certain real property, namely 10418 Ives Street Bellflower, California 90706, A.P.N. # 6275-014-004, Legal Description: "Lot 19, Tract 19795, in the City of Bellflower, County of Los Angeles, State of California, as per map recorded in Book 518, Pages 1 and 2 of Maps, in the office of the County Recorder of said County."

139.   Plaintiff Krage is Sole Heir of the Estate of Verna Gladys Kroemer Krage.

140.   Defendant Boulter was and is the President of Defendant Val-Chris.  Boulter ordered, directed, managed and supervised the full range and scope of daily activities of Defendant Val-Chris during all times relevant to this cause of action.

23

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION

141. Defendant Val-Chris was the Lender in the mortgage in question relating to the real property in question in this action. Val-Chris, through Val-Chris Escrow, also acted as an escrow agent in the mortgage transaction.

142. Defendant Beasley was and is the President of Defendant RESS Financial. Beasley ordered, directed, managed and supervised the full range and scope of daily activities of Defendant RESS Financial during all times relevant to this cause of action.

143. Defendant RESS Financial is a corporation that regularly acts, and in this case acted, as Defendant Val Chris' agent in foreclosures of real property.

144. The defendants herein named as ``all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto'' (hereinafter sometimes referred to as ``the unknown defendants'') are unknown to Plaintiff.

145. The "unknown defendants" also include but are not limited to: (1) any holder(s) in due course of the Note and the Trust Deed in question; (2) any agent(s), assignee(s) or successor(s) of any holder(s) in due course of the Note and the Trust Deed in question; (3) any purported bidder(s), including the purported winning bidder(s) at any purported Foreclosure Sale of the real property in question. **A Foreclosure Sale is currently scheduled for May 28, 2008.**

146. Defendants, and each of them, had a duty to obey all relevant Federal and California laws at all times during the entire course of the mortgage transaction and during any purported Foreclosure. Defendants, and each of them, knew or should have known of this continuing duty to obey all relevant Federal and California laws because Defendants, and each of them, frequently make, process, service, and deal with mortgages, Deeds of Trust and Foreclosures.

147. Defendants Boulter, Val-Chris, Beasley, RESS and the "unknown defendants" and DOE Defendants, and each of them, claim some right, title, estate, lien, or interest in the

24

ADVERSARY PROCEEDING: COMPLAINT FOR RESCISSION & CANCELLATION